UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILMA M.S.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

20-CV-6383-LJV
DECISION & ORDER

---

On June 8, 2020, the plaintiff, Wilma M.S. ("Wilma"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On December 2, 2020, Wilma moved for judgment on the pleadings, Docket Item 8; on March 2, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on March 23, 2021, Wilma replied, Docket Item 12.

For the reasons stated below, this Court grants Wilma's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Wilma argues that the ALJ erred in two ways. Docket Item 8-1. First, she argues that the ALJ erred in concluding that her fibromyalgia was not a medically determinable impairment and improperly excluded it when constructing her residual functional

2

capacity ("RFC").[3]  *Id.*  More specifically, she argues that the ALJ incorrectly applied only one of the two possible sets of criteria for determining fibromyalgia and did not consider the other.  *Id.*  Second, she argues that the ALJ improperly rejected opinion evidence, instead relying on his own lay judgment to formulate her RFC.  *Id.*  This Court agrees with Wilma and, because the ALJ's errors were to Wilma's prejudice, remands the matter to the Commissioner.

## I. FIBROMYALGIA

The ALJ determined that Wilma's fibromyalgia was not a medically determinable impairment, Docket Item 5 at 27, and therefore did not consider fibromyalgia in formulating Wilma's RFC, *id*. at 29-35.  Wilma argues that this was error, Docket Item 8-1, and this Court agrees.  In fact, the ALJ erred in two ways when determining whether fibromyalgia was a medically determinable impairment.

Social Security Ruling ("SSR") 12-2p "sets forth the following requirements for finding that fibromyalgia is a medically determinable impairment: (1) a physician has diagnosed fibromyalgia; (2) the physician has provided evidence described either by the 1990 American College of Rheumatology [("ACR") Criteria for the Classification of Fibromyalgia] or the 2010 ACR Preliminary Diagnostic Criteria; and (3) the physician's 'diagnosis is not inconsistent with other evidence in the person's case record.'" *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 94 (W.D.N.Y. 2015) (quoting SSR 12-2p, 2012

---

[3] A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 416.945(a)(1), "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

WL 3104869, at *2 (July 25, 2012)).  Under the 1990 criteria, a claimant must show a history of widespread pain, at least eleven positive tender points out of eighteen identified tender-point sites, and evidence that other disorders that could cause the symptoms or signs were excluded.  *See id.* at *2-3.  Under the 2010 criteria, a claimant must show a history of widespread pain; repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and evidence that other disorders that could cause those symptoms, signs, or co-occurring conditions were excluded.  *See id.* at *3.

If a claimant satisfies the other requirements of SSR 12-2p, meeting either the 1990 or the 2010 criteria is sufficient to establish that the claimant has a medically determinable impairment of fibromyalgia.  *See Selian v. Astrue*, 708 F.3d 409, 419 n.3 (2d Cir. 2013) (per curiam); *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 1109573, at *4 (W.D.N.Y. Mar. 11, 2019).  Therefore, before deciding that a claimant does not have fibromyalgia, an ALJ must analyze both the 1990 and the 2010 criteria.  *See Kirah D. v. Berryhill*, 2019 WL 587459, at *6-7 (N.D.N.Y. Feb. 13, 2019).

Here, the ALJ did not specify the criteria he used to conclude that Wilma did not have a medically determinable impairment of fibromyalgia, but his analysis appears to have followed the 1990 criteria.  And the ALJ's first error was in misapplying those criteria.  More specifically, the ALJ stated that "the record does not include evidence of the necessary number of positive tender points[4] along with evidence that other

---

[4] The terms "tender points" and "trigger points" are used at various times throughout the medical record and pleadings to describe sensitive areas of pain.  And courts have used both terms in the Social Security context.  *See, e.g., Diaz v. Comm'r of Soc. Sec.*, 2019 WL 2401593, at *4 (W.D.N.Y. June 7, 2019) (finding ALJ erred by failing to "discuss whether th[e] evidence satisfied at least eleven out of the eighteen

disorders that could cause the symptoms were excluded."[5]  Docket Item 5 at 27.  But the record indeed included evidence of that number—that is, eleven under the 1990 criteria—of positive tender points.

Beatrice Deshommes, M.D., observed "[m]ultiple tender trigger points" in an examination of Wilma on October 23, 2018.  *Id.* at 511.  The ALJ should have at least acknowledged that finding and analyzed whether "multiple" meant at least eleven and therefore whether it met the 1990 criteria.  *See Dillon v. Astrue*, 2010 WL 2850910, *6 (C.D. Cal. July 19, 2010)) (finding error where the record noted the plaintiff had "multiple" trigger points and the ALJ did not explain how the failure of the physician to state "the number of [] trigger points reflected that [the] plaintiff had [fewer] than eleven such points"); *see also John*, 2019 WL 2314620, at *2 (same where the claimant's doctors identified "at least ten trigger points" and "tender points 'all over'" (emphasis removed)).  And even more to the point, Trevor Litchmore, M.D., appreciated and

---

tender point sites"); *Casselbury*, 90 F. Supp. 3d at 94 (finding ALJ erred in evaluating whether a claimant had a medically determinable impairment of fibromyalgia where he "improperly state[d] that the medical record did not identify the requisite trigger points"); *John v. Berryhill*, 2019 WL 2314620, at *2 (W.D.N.Y. May 31, 2019) (considering findings of both trigger and tender points).

[5] The ALJ also did not explain his conclusion that there was no evidence "that other disorders . . . were excluded." See Docket Item 5 at 27.  And because the 1990 and 2010 criteria both require the exclusion of other disorders to diagnose fibromyalgia, the physicians who diagnosed it here presumably excluded other disorders as the cause of Wilma's symptoms.  In any event, the ALJ's conclusory finding does not permit this Court to understand the reasons behind his conclusion or to evaluate whether that conclusion had adequate support in the record.  See *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) ("The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that . . . a reviewing court[] . . . may assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." (alterations omitted) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)).

5

named "[e]leven trigger points" in his examination of Wilma on March 28, 2017.  Docket Item 5 at 410.  So contrary to the ALJ's finding, there indeed was at least some evidence of "the necessary number of positive tender points."[6]  *See id.* at 27.

In analyzing whether Wilma's fibromyalgia was a medically determinable impairment, the ALJ did not even acknowledge those findings about positive tender or trigger points by Dr. Deshommes and Dr. Litchmore, let alone explain whether—and, if so, why—he discounted them.[7]  *See id.*  Nor did he otherwise address why he rejected

---

[6] The ALJ later assigned "no weight" and "little weight" to Dr. Deshommes's opinions and "little weight" to Dr. Litchmore's.  *See* Docket Item 5 at 32-34.  But discrediting their opinions does not address their examination findings.  Moreover, the ALJ never even mentioned Dr. Deshommes's finding of "[m]ultiple tender trigger points," *id.* at 511, or Dr. Litchmore's finding of "[e]leven trigger points," *id.* at 410.  And so this Court has no way to know whether the ALJ rejected these findings for some reason, ignored them, or simply missed them.

[7] The ALJ acknowledged that "the record includes a diagnosis of [fibromyalgia] based on reported history," but he apparently discounted that diagnosis because "a treating source indicated that it was unclear how and when the diagnosis was made."  Docket Item 5 at 27.  The ALJ apparently was referring to Dr. Deshommes, who indeed noted fibromyalgia by history and said that the diagnosis had been made by an unknown source.  *See id.* at 507, 513.  But Dr. Deshommes certainly was not suggesting that she did not agree with that diagnosis; on the contrary, she explicitly noted that she suspected fibromyalgia as the cause of many of Wilma's problems.  *See, e.g., id.* at 514.  And Dr. Litchmore explicitly diagnosed fibromyalgia, *id.* at 411, something the ALJ did not even mention.  What is more, if the ALJ questioned the diagnosis of fibromyalgia because it had been made by an unknown source, it was incumbent on him to get another opinion—not simply to reject the diagnosis.  *See Rick v. Comm'r of Soc. Sec.*, 2020 WL 4344844, at *3 (W.D.N.Y. July 29, 2020) (an ALJ is obligated to take remedial steps, "such as re-contacting the plaintiff's treating physician or requesting a consultative examination," when the record lacks information sufficient to determine whether a claimant "has a medically determinable impairment of fibromyalgia").  So the ALJ should have contacted Wilma's medical providers, or otherwise obtained additional medical opinions, to clarify what might have been unclear.  *See* SSR 12-2p, 2012 WL 3104869, at *4*; see also Villar v. Comm'r of Soc. Sec.,* 2020 WL 1131225, at *4 (W.D.N.Y. Mar. 9, 2020).

6

the explicit diagnoses of fibromyalgia.[8]  So the ALJ's analysis under the 1990 criteria clearly was inadequate.

The ALJ's second error was not analyzing the 2010 criteria after he determined that Wilma did not have a medically determinable impairment of fibromyalgia under the 1990 criteria.  As this Court has found, because there are two sets of criteria that might establish a medically determinable impairment of fibromyalgia, an ALJ must analyze both before deciding that a claimant does not suffer from that impairment.  *See Grubbs v. Comm'r of Soc. Sec.*, 2019 WL 1298481, at *4-5 (W.D.N.Y. Mar. 21, 2019); *see also Kirah D.*, 2019 WL 587459, at *6-7.  And the ALJ's failure to do that here was error as well.

Moreover, the record here includes medical evidence that may well show that Wilma had a medically determinable impairment of fibromyalgia under the 2010 criteria.  For example, the record repeatedly documents Wilma's history of widespread pain.  *See* Docket Item 5 at 316, 329, 338, 341, 373, 377, 436, 503, 506, 548.  Likewise, the record includes evidence of mental health problems such as anxiety and depression, as well as other cognitive issues.  *See id.* at 322, 326, 416-17, 419, 666, 908.  So there is at least some medical evidence that Wilma met the 2010 criteria, and the failure to apply and analyze those criteria was another error.

The Commissioner argues that even if the ALJ erred in his medically-determinable-impairment analysis, that error was harmless and remand is not required.

---

[8] Dr. Litchmore diagnosed Wilma with fibromyalgia on March 28, 2017.  Docket Item 5 at 411.  In addition, Dr. Deshommes observed that she "suspect[ed] most of [Wilma's] limitations physical disability [sic] are from fibromyalgia which was diagnosed by [a] different provider" and she "suspect[ed the] component of fibromyalgia [was] contributing to her back pain."  *Id.* at 514.

Docket Item 11-1 at 18.  Although an ALJ's failure to consider an impairment to be severe may be harmless error, that is so only if the ALJ found other severe impairments and considered the nonsevere impairment in formulating the claimant's RFC.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).  Here, however, the ALJ did not even consider fibromyalgia to be a medically determinable impairment in the first place and therefore did not consider limitations arising from fibromyalgia when determining the combined effect of Wilma's impairments on her RFC.  Courts repeatedly have remanded for that error.  *See Keller v. Colvin*, 2017 WL 4112024, *14 (W.D.N.Y. Sept. 18, 2017) (collecting cases); *see also Cooper*, 2019 WL 1109573, at *5 ("[B]ecause the ALJ concluded that [the claimant's] fibromyalgia [was] not a medically determinable impairment, she had no basis to credit [her] statements regarding her fibromyalgia-related symptoms in the remainder of her decision.").

Furthermore, the ALJ's errors were not cured when the ALJ considered some symptoms of fibromyalgia in formulating Wilma's RFC.  For example, widespread pain is a symptom of fibromyalgia, *see* SSR 12-2p, 2012 WL 3104869, at *2-3, and the ALJ referred to body pain in his RFC analysis, Docket Item 5 at 30.  But the ALJ addressed that pain only in the context of osteoarthritis and did not consider the limitations that fibromyalgia-based pain might cause.  *See id.* at 30-31.  And as this Court has previously held, the failure to explicitly consider each impairment in determining a claimant's RFC is an error that is not cured by mentioning shared symptoms in the context of another condition.  *Szefler v. Berryhill*, 2018 WL 6831156, at *6 n.3. (W.D.N.Y. Dec. 28, 2018).

8

In sum, the ALJ's failure to appropriately consider and analyze Wilma's possible fibromyalgia was error, and that error was not harmless. For that reason, remand is required.

## II.     LAY OPINION

Wilma also argues that the ALJ improperly discounted all medical opinion evidence and therefore based her RFC on his own lay judgment. Docket Item 8-1. Again, this Court agrees.

An ALJ may not substitute his or her lay judgment for the opinions of medical professionals, and when there is no medical opinion to support a claimant's ability to perform a certain function, the ALJ cannot create an RFC from whole cloth. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled [sic] that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." (citation and internal quotation marks omitted)). In other words, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of [a claimant's] RFC without a medical advisor's assessment is not supported by substantial evidence." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (citation omitted).

Here, the ALJ found that Wilma had the RFC to perform light work with certain specific limitations.[9] Docket Item 5 at 29-30. In formulating that RFC, however, the ALJ

---

[9] The ALJ determined that Wilma could "perform light work as defined in 20 [C.F.R. §] 416.967(b)" except that she could occasionally balance, crouch, kneel, crawl, and stoop; could occasionally climb ramps, stairs, ladders, and scaffolds; could frequently push, pull, reach, handle, finger, and feel bilaterally; could occasionally push, pull, and operate foot controls with her lower extremities; needed to avoid work involving

9

gave little or no weight to every medical opinion in the record.[10]  And because the ALJ relied on no medical opinion to support his specific findings, the RFC necessarily was a product of his own lay judgment.  That is another error requiring remand.

The Commissioner argues that "the Second Circuit has never held that an ALJ must rely on a medical source opinion in assessing RFC" and that this Court therefore should not require it.  Docket Item 11-1 at 25.  And the Commissioner is correct that an ALJ need not base an RFC on a formal medical opinion when the record "otherwise contains a useful assessment of a claimant's functional abilities from a medical source." *Gulczewski v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 490, 497 (W.D.N.Y. 2020).  But that is not the case here.  Here, the record is "devoid of any assessment of [Wilma's] exertional limitations and d[id] not even contain any useful discussion of such limitations."  *Bartha v. Comm'r of Soc. Sec.*, 2019 WL 4643584, at *2 (W.D.N.Y. Sept. 24, 2019).  So the ALJ's specific limitations here necessarily came from whole cloth.

---

crowds, extreme temperatures, wetness, humidity, vibrations, fumes, dusts, odors, gases, poor ventilation, and other pulmonary irritants; needed to avoid hazards such as unprotected heights, machines with moving mechanical parts, and driving employer vehicles; could understand, remember, and carry out simple instructions; could occasionally interact appropriately with supervisors, coworkers, and the public; could make simple work-related decisions; could tolerate few changes in a routine work setting; and would be off task 10 percent of the day due to alternating between sitting and standing and/or lapses in attention or concentration.  Docket Item 5 at 29-30.

[10] The ALJ assigned little weight to the opinion of the "[s]tate agency consultants"; "to the opinion of Dr. Litchmore"; "to the severely limiting opinion of Dr. Lin"; "to the opinion of Aquella Deskor, LMHC"; "to the opinion of Karen Mazza, FNP"; "to the form completed by Dr. Deshommes"; and to some of the " [global assessment of functioning ("GAF")] opinions in the record."  Docket Item 5 at 32-34.  He "assign[ed] no weight to the opinion form completed by Dr. [] Deshommes" and "to the [GAF] scores . . . . related to a non-relevant period."  *Id.* at 33-34.

For example, without any medical opinion to support his judgment the ALJ found that Wilma could occasionally "balance, crouch, kneel, crawl, [and] stoop, [and] climb ramps, stairs, ladders, and scaffolds."  Docket Item 5 at 29.  Other than reciting bare medical data, the ALJ provided no reason for his conclusion that Wilma could perform these tasks occasionally—as opposed to always or seldom or frequently.  So those highly specific limitations must have been the product of his lay judgment—and therefore beyond his expertise.  *See, e.g., Timothy S. v. Comm'r of Soc. Sec.*, 2021 WL 661392, at *2 (W.D.N.Y. Feb. 19, 2021) (ALJ improperly opined on claimant's ability to climb ladders and scaffolds even though "the medical evidence the ALJ cited contain[ed] no reference" to that equipment).

Similarly, the ALJ found that Wilma would be "off task 10 percent of the day due to alternating between sitting and standing and/or lapses in attention or concentration," Docket Item 5 at 30, but he did not tie that specific limitation to the finding of any provider or, indeed, even suggest where it came from.  Perhaps the ALJ took the low end of the "10 to 25 percent of the time" that Mental Health Counselor Deskor opined that Wilma would be unable to function in certain areas.  *See id.* at 33 (assigning little weight to Mr. Deskor's opinion because even though "Mr. Deskor has a treating relationship" with Wilma, "Mr. Deskor provided minimal support for the severe limitations in his opinion").  Perhaps he credited Wilma's testimony that she needed to alternate between sitting and standing and had lapses in attention, *id.* at 51, 54, 56, 60-61, and thought that "10 percent of the day" was a reasonable estimate of the time she would have to spend off task.  Or perhaps he came up with that number—as opposed to, say, five percent or twenty percent—some other way.  Without any clue as to which of those

11

provided the basis for the ALJ's limitation, this Court can conclude only that the basis for the number was the ALJ's own surmise. And that was error.

In sum, because the ALJ based specific limitations in Wilma's RFC on his own lay opinion and nothing more, his decision is not supported by substantial evidence, and remand is required. *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that [the] plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data.")

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 11, is DENIED, and Wilma's motion for judgment on the pleadings, Docket Item 8, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:       January 14, 2022
             Buffalo, New York

                                              */s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE